UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A.B.,

    Plaintiff,

v.

ANDREW SAUL,

    Defendant.

Case No. 20-cv-02697-NC

**ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS**

Re: ECF 16, 19, 21

Plaintiff and Claimant A.B. appeals Social Security Commissioner Andrew Saul's denial of his application for social security benefits under Title II of the Social Security Act. After reviewing the briefing, the Court FINDS that: (1) the Administrative Law Judge erred in discounting the testimonies of A.B. and his parents, J.B. and S.B., and (2) the ALJ erred in his weighting of the medical opinions of Dr. Ricardo Gonzales, Dr. Sukhnandan Sidhu, and Mr. John Yost. Accordingly, the Court reverses the ALJ's decision and REMANDS the case for further proceedings.

**I. BACKGROUND**

On July 15, 2014, A.B. filed an application for Disabled Adult Child Benefits using his mother's earnings record. *See* AR 522. A.B. alleged disability, due to schizophrenia and bipolar disorder, beginning October 28, 2000. AR 618. A.B.'s claim was denied both initially and upon reconsideration. *See* AR 549–53, 556–60. After a hearing in front of

1  the ALJ, A.B.'s application was denied again. AR 28–34. On January 16, 2018, A.B.
2  appealed the ALJ's decision. AR 1791–1792; *see* Case No. 1:18-cv-00326-JST. On July
3  5, 2018, Magistrate Judge Robert M. Illman remanded this matter for further proceedings
4  and a new decision. AR 1798–1801. On August 13, 2018, the Appeals Council issued a
5  remand order, directing the ALJ to indicate the weight given to Dr. Wong's opinion and to
6  further evaluate A.B.'s severe mental impairments and subjective testimony. AR 1807–
7  1808.

Following remand, the ALJ held another hearing and again found A.B. not disabled prior to the age of 22. AR 1757–1787, 1738–1756. In the decision, the ALJ once again discredited the testimonies of A.B. and his parents and allocated little weight to the medical opinions of Dr. Gonzales, Dr. Sidhu, and Mr. Yost. *See* AR 1743–1746. Additionally, the ALJ found A.B. capable of substantial gainful employment under "Step 5" of the disability determination process. *See* AR 1747.

In March 2020, A.B. requested an exception to the ALJ's decision, but the Appeals Council denied his claim again. AR 1728–1734. A.B. now seeks judicial review of the Commissioner's decision. *See* ECF 16. All parties have consented to the jurisdiction of a magistrate judge. *See* ECF 9, 11.

## II. DISCUSSION

A.B. seeks reversal of the ALJ's decision on the grounds that the ALJ: (1) failed to consider A.B.'s statements; (2) failed to consider the lay witness testimony of A.B.'s parents; (3) erred in his weighting of A.B.'s doctors' medical opinions; and (4) failed to meet his "Step Five" burden of proof. *See* ECF 16 at 1. The Court agrees with A.B.'s first three arguments, and orders the case remanded.

### A. A.B.'s Testimony

When assessing a claimant's testimony regarding the subjective intensity of symptoms, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first "determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce pain

2

or other symptoms alleged.'" *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). If a claimant presents evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must give "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of his symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks omitted). Even if the claimant's testimony suggests he may have some difficulty functioning, it can still "be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citing *Turner v. Comm'r of Soc. Sec.*, 513 F.3d 1217, 1225 (9th Cir. 2012)).

Here, it is undisputed that A.B. presented objective medical evidence of schizophrenia and bipolar disorder which could cause A.B.'s asserted impairments: namely, impaired understanding, remembering, carrying out simple routine tasks, concentration, and interacting with others. *See* AR 1742, 1744. Further, the ALJ did not find affirmative evidence of malingering. *See* 1741–1747. Rather, the ALJ rejected A.B.'s testimony on the grounds that: (1) A.B.'s statements are inconsistent with the medical evidence and other evidence in the record, and (2) A.B.'s daily activities are inconsistent with his allegations of disabling symptoms and limitations. AR 1744.

First, the Court finds that the ALJ's determination of inconsistency with the medical record and other evidence is not "specific, clear and convincing." *See Molina*, 674 F. 3d at 1112. The ALJ did not point to specific instances of inconsistency between the record and A.B.'s testimony. *See* AR 1744. In fact, the testimony of A.B.'s parents and the medical

3

evidence are consistent with his testimony regarding his fatigue, need to nap, and difficulty concentrating and managing stress. *See* AR 866, 1723, 1743, 1776–1778.

Second, the ALJ's determination of inconsistency with A.B.'s daily activities is not "specific, clear and convincing." *See Molina*, 674 F. 3d at 1112. When considering a claimant's daily activities, an "ALJ must make 'specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ concluded, without explanation, that A.B.'s daily activities–grooming himself, shopping, mowing the lawn, washing the dishes, vacuuming, and attending school–contradicted A.B.'s statements about his disabling symptoms and limitations. AR 1744–1745. These activities are not demanding and do not contradict A.B.'s claims of extreme fatigue, inability to concentrate, and difficulty managing stress. *See Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Further, the daily activities the ALJ cites are from 2009, 2011, and 2014 checkbox forms and are not entirely relevant to the 2001-2005 period in question. *See* AR 636–642, 658–666, 706–715. The ALJ also mischaracterized the results of these forms. According to the forms, A.B.: napped during the day, was often too tired to do minimal chores, would shop for only 30 minutes a week, would lose the ability to engage in activities because of fatigue, would withdraw from others, had a hard time concentrating long enough to do schoolwork, and had trouble dealing with stress. *See* AR 636–642. In sum, the Court finds that A.B.'s testimony and his daily activities are consistent.

Thus, on remand, the ALJ must reevaluate A.B.'s testimony and provide specific, clear, and convincing reasons for rejecting it.

//

//

4

**B. Lay Testimony of A.B.'s Parents**

An ALJ must consider statements of "non-medical sources" including spouses, parents, and other relatives in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). If an ALJ rejects the opinion of a lay witness, they must provide specific reasons for rejection germane to that witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

**1. J.B.'s Lay Witness Testimony**

The ALJ rejected J.B.'s witness testimony because it was "internally inconsistent." AR 1743. Specifically, the ALJ pointed to J.B.'s testimony describing A.B. isolating himself and having a flat affect when compliant with medication as inconsistent with the Third-Party Function Reports, where J.B. wrote that A.B. helped with chores, played video games, shopped, and ran errands. AR 1743. Additionally, the ALJ noted that A.B. completed an associate degree in 2006 and a bachelor's degree in 2011. *Id*.

First, J.B.'s statements in the Third-Party Function Reports are from 2009 and 2011 and are not relevant to the 2001-2005 period at issue. *See* AR 650, 667. Further, the ALJ mischaracterized the Reports. In the Reports, J.B. stated that A.B.: takes 2-hour naps almost every day, is fatigued most days, and sometimes needs help with chores. AR 667–670. She also stated A.B. lacks interest and isolates himself when he feels tired or depressed. AR 672. Thus, the Court finds that J.B.'s testimony and Report are consistent.

Second, J.B.'s testimony that A.B. was isolated and had a flat affect when compliant with medication is also consistent with A.B.'s ability to complete his degrees. J.B. testified that A.B. did attend classes but there were times when he didn't make it to school. AR 1778. She also needed to help him study, and he sometimes had to drop or repeat classes. *Id.* Consequently, it took A.B. four years to finish his associate degree. *Id*. The Court finds that J.B.'s testimony is internally consistent. Thus, on remand, the ALJ must reevaluate J.B.'s lay testimony and provide specific reasons for rejecting it.

//

//

### 2. S.B.'s Lay Witness Testimony

The ALJ also rejected S.B.'s witness testimony because: (1) it was inconsistent and unsupported by the overall evidence of the record, and (2) S.B. is a close relative of A.B. who is expected to endorse his application for disability benefits. AR 1743.

The ALJ erred in two ways. First, S.B.'s statements that A.B. is extremely fatigued most of the time, loses his ability to focus, becomes irritable and depressed, are consistent with the overall evidence of the record. For instance, in the 2019 hearing, A.B. testified that from the ages of eighteen to twenty-two, he was fatigued and could not find enjoyment in anything. AR 1767–1768. Moreover, the medical opinions of Dr. Sidhu, Dr. Wong, and Dr. Gonzales confirm that A.B.'s capacity to maintain concentration, adequate endurance, and attention is impaired. AR 866, 929, 1726. Second, the ALJ erred in rejecting S.B.'s testimony on the grounds that he is A.B.'s father. The fact that a lay witness is a family member is not a proper basis for rejecting his lay testimony. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009). Thus, on remand, the ALJ must reevaluate S.B.'s lay testimony and provide specific reasons for rejecting it.

### C. Medical Opinions

Generally, a treating physician's opinion carries greater weight than that of an examining physician, and an examining physician's opinion carries greater weight than that of a non-examining physician. *Holohan v. Massanari*, 246 F. 3d 1195, 1202 (9th Cir. 2011). An ALJ must provide "clear and convincing reasons that are supported by substantial evidence" to reject uncontradicted opinions of a treating or examining doctor. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir, 2008). Contradicted opinions of a treating or examining doctor may be rejected by "specific and legitimate reasons that are supported by substantial evidence." *Id*.

### 1. Dr. Wong's Medical Opinion Testimony

Here, the ALJ gave "great" weight to the opinion of non-treating state consultative examiner, Dr. Wong. AR 1745. Dr. Wong conducted a psychiatric consultative examination of A.B. on April 27, 2009. AR 863–866. Based on this examination, Dr.

Wong opined that A.B.'s ability to carry out simple and complex instructions is intact, his ability to relate to coworkers and the public is impaired, he has limited social insight, is somewhat schizoid in his adjustment, and his ability to maintain adequate pace and level of endurance is moderately impaired. AR 1745. The ALJ allocated "great" weight to Dr. Wong's opinion because he is a "specialist who is familiar with Social Security policy and regulations." *Id*. The ALJ also found that Dr. Wong reviewed the complete documentary record and provided a detailed explanation with references to evidence in the record to support his opinion. *Id*. Finally, the ALJ noted that Dr. Wong's opinion recognized A.B.'s periodic noncompliance with medications. *Id*. Consequently, the Court finds that the ALJ did not err in affording "great" weight to Dr. Wong's opinion because he provided specific, legitimate, and evidence-based reasons for his determination.

### 2. Dr. Gonzales's Medical Opinion Testimony

The ALJ accorded "some" weight to A.B.'s treating physician, Dr. Gonzales. AR 1745. Dr. Gonzales treated A.B. for about sixteen months beginning in August 2001. *See* AR 1420–1421. During this treatment, Dr. Gonzales diagnosed A.B. with major depression and psychotic features. AR 1745. The ALJ accorded "some" weight to Dr. Gonzales's opinion because it showed that although A.B. is stable at times and other times not stable, he was able to go to college, earn an associate degree, and was never hospitalized during the relevant period. AR 1745. However, the Court finds that the ALJ erred in this reasoning. Dr. Gonzales was not A.B.'s physician during the time A.B. attended college, and his opinion did not include medical evaluations from after December 2002. Further, although A.B. was not hospitalized, Dr. Gonzales recommended hospitalization when he began working with A.B. AR 1774. These inconsistencies, and the ALJ's failure provide specific and legitimate reasons to accord only "some" weight to Dr. Gonzales's medical opinion, show error in the ALJ's analysis.

//

//

//

### 3. Dr. Sidhu's Medical Opinion Testimony

The ALJ also accorded "some" weight to the testimony of A.B.'s treating physician, Dr. Sidhu. Dr. Sidhu treated A.B. monthly from 2007 to 2011. *See* AR 950–951. The ALJ accorded "some" weight to Dr. Sidhu's opinion because it did not distinguish between times when A.B.'s symptoms were aggravated and not. AR 1745. The ALJ pointed to A.B.'s ability to finish high school and an associate degree as inconsistent with Dr. Sidhu's finding that A.B. has a poor ability to complete a normal workday, perform within a schedule, and respond to changes effectively. *Id*. The Court finds that this reason is not a clear and convincing reason sufficient to discredit Dr. Sidhu's assessment. A.B. was a high school senior when his symptoms started and was homeschooled soon after. AR 500–501. He had to reduce his schedule from advanced courses to basic courses to ensure that he could finish high school. AR 501–502; 1727. Moreover, when working towards his associate degree, A.B. took only one or two classes per semester in spring 2004 and fall 2005. *See* AR 1882. At this pace, it took him four years to earn his associate degree. AR 1764. The Court finds that A.B.'s ability to finish high school and sustain his half-time college class schedule is consistent with Dr. Sidhu's findings. Accordingly, the Court finds that the ALJ erred by not providing specific and legitimate reasons to afford only "some" weight to Dr. Sidhu's opinion.

### 4. Mr. Yost's Medical Opinion Testimony

The ALJ accorded "little" weight to testimony of A.B.'s social worker, Mr. Yost. Mr. Yost worked with A.B. intermittently from 2001 to 2015. AR 1413. The ALJ accorded "little" weight to Mr. Yost's opinion because he: (1) is not an acceptable medical source, and (2) did not consider that medication stabilizes A.B.'s condition and allows him to function satisfactorily. AR 1746.

First, Mr. Yost, as a social worker, is not considered an "acceptable medical source." 20 C.F.R. § 404.1513(d). The code of federal regulations treats "[p]ublic and private social welfare agency personnel" as "other sources." 20 C.F.R. § 404.1513(d)(3). Accordingly, the ALJ may expressly disregard the testimony of a social worker as lay

testimony if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (2001)). Although the ALJ here could have disregarded Mr. Yost's medical opinion, he failed to identify a germane reason to exclude it.

Second, the ALJ accorded Mr. Yost's opinion "little" weight because Mr. Yost failed to consider that medication allows A.B. to function to a degree. AR 1746. Mr. Yost described how A.B.'s condition deteriorated "with alarming speed" when he stopped taking his medications in December 2002, stabilized "to a degree" when he restarted his medication in August 2003, and reemerged when he slowly reduced his medication later. AR 2367. In sum, Mr. Yost acknowledged the stabilizing effect medication has on A.B.'s condition. Thus, the Court finds that the ALJ erred by failing to provide a germane reason to discredit Mr. Yost's testimony.

### 5. Dr. Bernard Bacay's Medical Opinion Testimony

The ALJ accorded "little" weight to state agency consultative examiner, Dr. Bacay. Dr. Bacay opined that A.B. has not been able to work because of depression and psychosis. AR 1745. The ALJ accorded "little" weight to Dr. Bacay's medical opinion because he: (1) did not reference the medical records, and (2) did not explain how A.B.'s impairments caused him to be disabled or elaborate on A.B.'s specific limitations. AR 1745–1746. The Court finds that these reasons are specific and legitimate reasons and sufficient to justify affording "little" weight to Dr. Bacay's opinion.

### D. Step Five

At "Step Five" of the five-step sequential evaluation process, the burden shifts to the Social Security Administration to demonstrate that a claimant is not disabled and that they can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. *See Tackett v. Apfel*, 180 F. 3d 1094, 1098–1099 (1999). The Commissioner takes into consideration the claimant's Residual Functional Capacity, age, education, and work experience. *See* 20 CFR § 401.1560(b)(3). The ALJ's depiction of the claimant's disability "must be accurate, detailed, and supported by the

9

medical record." *Tackett*, 480 F.3d at 1101.  The Commissioner can meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can perform by the testimony of a vocational expert. *Id* at 1101.

Here, A.B. claims that the ALJ: (1) failed to include all of the limitations in his hypothetical, and (2) failed to address all the vocational expert testimony as it pertained to the limitations he did find. *See* ECF 16. The ALJ asked the Vocational Expert whether a hypothetical individual with the same work profile and RFC as A.B. could perform work in the national economy. AR 1779–1780. The VE testified that the hypothetical individual would be able to perform the medium exertional work of a dishwasher or auto detailer. AR 1780. A.B. claims that the hypothetical failed to include his inability to interact appropriately. *See* ECF 16. The ALJ did, however, limit A.B. to jobs with only occasional contact with supervisors, coworkers, and the public. AR 1780. This limitation is supported by the overall evidence of the record. For example, as the Commissioner points out, A.B. was able to go to school, go shopping at least once a week, and attend church. *See* ECF 19 at 16. A.B.'s interpretation of his limitations is not supported by the overall record, and the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by claimant's counsel. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Thus, the Court finds that the ALJ met his burden of proof at "Step Five."

## III. CONCLUSION

The Court REMANDS this case for further proceedings. On remand, the ALJ must reevaluate A.B. and his parents' testimony, the medical opinions of Dr. Gonzales, Dr. Sidhu, and Mr. Yost to determine if A.B. would be disabled considering the information provided by these individuals.

**IT IS SO ORDERED.**

Dated: July 6, 2021

NATHANAEL M. COUSINS
United States Magistrate Judge

10